IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CHAD WEIDNER, an individual,**
**KAROLIEN WALRAVENS, an individual,**

**Plaintiffs,**

**v.**

**Rusty Carroll, an individual,**
**R2C2, INC., a corporation,**

**Defendants.**                                                No. 06-CV-782-DRH

MEMORANDUM AND ORDER

**HERNDON, District Judge:**

I. Introduction

Now before the Court is Defendant's Motion to Dismiss. (Doc. 11.) Defendants move to dismiss the Complaint in its entirety based on a number of theories too numerous to summarize. Plaintiffs respond in opposition. (Doc. 13.) After careful consideration, the Court finds that each of Defendants' arguments, save one, lacks merit. Therefore, the motion to dismiss is **DENIED in part** and **GRANTED in part**. (Doc. 11.)

II. Background

On October 12, 2006, Plaintiffs Chad Weidner and Karolien Walravens, on their own behalf and as representatives of a class of individuals and entities similarly situated, filed a Complaint against Defendants Rusty Carroll and R2C2, Inc. ("R2C2") alleging copyright infringement, violation of Section 43(a) of the Lanham Act, unfair competition under Illinois statutes and common law, violation of federal RICO statute, and unjust enrichment. (Doc. 2.)  Plaintiffs further allege that Defendants own and operate several web sites that sale term papers, without proper authorization from the actual owners.  The Complaint defines the putative class as "all persons or entities who are the owners of the materials offered to the public through Carroll's Term Paper Web Sites." (Doc. 2, ¶ 13.)

### III.  Motion to Dismiss

#### A. Legal Standards

##### 1. Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss for failure to state a claim under **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, the Court must look to the complaint to determine whether it satisfies the threshold pleading requirements under **FEDERAL RULE OF CIVIL PROCEDURE 8**. **Rule 8** states that a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." **FED. R. CIV. P. 8(a)(2)**.  In a recent opinion issued on May 21, 2007, the Supreme Court held that **Rule 8** requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face" to survive a **Rule 12(b)(6)** motion.  *Bell*

*Atlantic Corp. v. Twombly*, \_\_\_ U.S. \_\_\_, 127 S. Ct. 1955, 1974 (2007). In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Seventh Circuit has read the *Bell Atlantic* decision to impose "two easy-to-clear hurdles":

> First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

*E.E.O.C. v. Concentra Health Services, Inc.*, 2007 WL 2215764, 2 (7th Cir. 2007) (citations omitted).

### 2. Federal Rule of Civil Procedure 9(b)

Defendant argues that several counts in Plaintiffs' complaint must be dismissed due to their failure to plead the fraud claims with the particularity demanded by **Federal Rule of Civil Procedure 9(b)**. Plaintiffs disagree.

**Federal Rule of Civil Procedure 9(b)** states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."[1] This heightened pleading requirement is premised upon a desire

---

[1] All fraud actions proceeding in federal court are subject to **Rule 9(b)**'s heightened standard, regardless of whether they are based on state or federal law. *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999)

"to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual." ***Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748 (7th Cir. 2005)**; *see also **Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)**. The purpose of the requirement is to "force the plaintiff to do more than the usual investigation before filing his complaint," a task that is warranted in light of the "great harm" that can result to company or individual upon the filing of a fraud action. ***Ackerman*, 172 F.3d at 469**; *see also **Fidelity Nat'l Title Ins. Co.*, 412 F.3d at 749** (noting that **Rule 9(b)** "forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims"). In order to meet **Rule 9(b)**'s strictures and survive dismissal, a plaintiff must generally allege the who, what, where, and when of the alleged fraud. ***Ackerman*, 172 F.3d at 469**; ***DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)**; *see also **Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)** ("[**Rule 9(b)**] requires 'the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."'" (citations omitted)).

### B. Analysis

#### 1. Claims against Rusty Carroll

Defendants assert that Plaintiffs have no cause of action against

---

(citing ***Herman & Maclean v. Huddleston*, 459 U.S. 375, 387-89 (1983)**).

Defendant Rusty Carroll as an individual. Plaintiffs disagree. Plaintiffs argue that the Complaint alleges sufficient facts to hold Carroll liable based on his own individual acts, separate and apart from Carroll's involvement with R2C2, Inc. The Court agrees.

As Plaintiffs' point out, on the date the Complaint was filed all of the very websites where the alleged activities occurred were registered to Rusty Carroll, and only Rusty Carroll. This alone is enough to hold Carroll individually liable for any activity that occurs on websites registered in his name; however, even if this were not the case, the Court finds that Plaintiffs have alleged sufficient facts to pierce the corporate veil.

In Illinois, "a corporation is a legal entity separate and distinct from its shareholders, directors and officers, and, generally, from other corporations with which it may be affiliated." ***Van Dorn Company v. Future Chemical and Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985) (citing *Main Bank of Chicago v. Baker*, 427 N.E.2d 94 (Ill. 1981))**. However, a corporations' separate and distinct entity will be disregarded and the veil of limited liability pierced when two requirements are met: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." ***Van Dorn*, 753 F.2d at 569-70 753 F.2d at 569-70 (quoting *Macaluso v.***

***Jenkins*, 420 N.E. 2d 251, 255 (Ill. 1981))**. At the pleading stage, Plaintiffs need not prove each of these factors. Rather, they merely need to have pled facts sufficient to support a plausible claim that both prongs have been met under the more liberal standard of notice pleading of **FEDERAL RULE OF CIVIL PROCEDURE 8**.

In determining whether unity of interest exists, courts consider the following factors: (1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) an individual treating the assets of another corporation as its own. ***Van Dorn*, 753 F.2d at 570**. Another factor is the "unlawful motive or intent" of the individual. ***Trustees of the Pension, Welfare and Vacation Fringe Benefits Funds v. Favia Elec. Co. Inc.*, 995 F.2d 785, 789 (7th Cir. 1993)**. Lastly, a court may consider additional factors as the "nonfunctioning of other officers or directors" and "whether the corporation is a mere facade for the operation of dominant stockholders." ***Ted Harrison Oil Co. v. Dokka*, 247 Ill.App.3d 791, 795, 187 Ill.Dec. 441, 617 N.E.2d 898 (1993)**.

Plaintiffs have satisfied their burden at this stage. First, Plaintiffs allege that Rusty Carroll is a "significant (if not sole) shareholder of R2C2." (Doc. 2, ¶ 4.) The Complaint further alleges that Rusty Carroll used R2C2 as a facade for his own illegal activities. (Doc. 2, ¶¶ 93, 95, 97.) In addition, the Complaint alleges that Rusty Carroll and R2C2 commingled funds and rights by being, at times, joint registrants for the term paper websites. (Doc., ¶¶ 43-47.) Furthermore, as joint registrants,

Carroll and R2C2 jointly owned the materials. This also equates to a commingling of assets. Lastly, Plaintiffs allege that public records indicate that R2C2 has only $1,000 of capital, an amount far insufficient to cover the expenses of R2C2. Clearly this undercapitalization raises a strong inference that funds are being commingled. For all of these reasons, the Court finds that Plaintiffs have pled sufficient facts to suggest a unity of interest between Carroll and R2C2.

Defendants only address the unity of interest prong. Defendants do not claim that Plaintiffs have failed to allege facts sufficient to support the second prong: adherence to the separate identities would sanction a fraud or promote injustice. Plaintiffs 32-page Complaint is replete with allegations of fraud. Clearly Plaintiffs have satisfied this prong. Accordingly, the Court finds that Plaintiffs have pled sufficient facts to proceed with their claims at this point against Carroll, both as an individual, and through an alter ego theory.

### 2. Copyright Infringement Claim - Count I

Defendants claim that Plaintiffs have failed to plead with sufficient specificity a claim of copyright infringement. The Seventh Circuit has held that complaints must merely allege "present ownership by plaintiff, registration in compliance with the applicable statute, and infringement by defendant. . . ." ***Mid America Title Co. v. Kirk*, 991 F.2d 417, 421 (7th Cir. 1993) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1237, at 283 (1990)**. Defendants seem to ignore that Plaintiffs incorporate by reference the

allegations contained in paragraphs 1 through 108 in each of the Counts. Instead, Defendants focus their arguments solely on the paragraphs under Count I. However, looking at the allegations contained not only under Count I, but also the allegations contained in paragraphs 1 through 108, it is clear that Plaintiffs have properly plead a copyright infringement claim. First. Plaintiffs allege that they own the copyright to the Native Dyes Manuscript. (Doc. 2, ¶ 110.) In addition, Plaintiffs allege that they have registered their copyright with the United Stated Copyright Office. (*Id.*, ¶ 111, *see also* Exhibit 9, Copyright Registration). The Copyright Registration shows that the effective date of registration is May 15, 2006. (*Id.*) Lastly, Plaintiffs have attached to their Complaint an exhibit showing that Defendants offered the Native Dyes Manuscript after May 15, 2006. (*Id.*, Ex. 8.) The Court finds that Plaintiffs have satisfied the pleading requirements for a copyright infringement claim. This claim will not be dismissed.

### 3. False Designation of Origin Claim - Count II

Plaintiffs allege that Defendants "have made false or misleading representations of fact likely to cause consumer confusion related to the goods or services offered through Carroll's Term Paper Web Sites" in violation of the **Lanham Act, 15 U.S.C. § 1125(a)**.[2] (Doc. 2, ¶¶ 117, 119.)

---

[2] **15 U.S.C. § 1125(a)** provides:

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

Defendants argue that Plaintiffs false designation of origin claim is barred by the holding in *Dastar Corp. v. Twentieth Century Fox Corp.*, **539 U.S. 23 (2003)**. In *Dastar*, the United States Supreme Court considered whether Dastar had violated the **Lanham Act** when it released a video set that it made from tapes of the original version of a series, whose copyright had expired, produced by Fox. Dastar did not give credit to Fox. The question was whether this constituted "reverse passing off" in violation of **§ 43 of the Lanham Act**.

The Supreme Court determined that the case hinged on the Act's definition of the "origin" of "goods." The Supreme Court concluded

> reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which *were* ), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Dastar*, **539 U.S. at 37**. In the present case, Plaintiffs argue that Defendants have

---

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

taken Plaintiffs works and repackaged them as their own. It is true that the Supreme Court stated in *Dastar* that "had defendant bought some of plaintiff's videotapes and 'merely repackaged them as its own,'" "this would have been a proper false designation of origin claim." **Id. at 31**. But this is merely dicta. This Court's understanding of *Dastar* is that it interprets the **Lanham Act's** use of the phrase the origin of goods to narrowly mean the "producer of the tangible product sold in the marketplace" and *not* "the person or entity that originated the ideas or communications that 'goods' embody or contain." **Id.** The fact that the "product" (i.e., the manuscript) in this case is nothing more tangible than the idea or communication that it embodies, particularly since there is nothing tangible about the information exchanged over the internet, confounds this analysis, but only slightly. Given the limits the Supreme Court has placed on its interpretation of the "origin of goods," the Court does not believe that Plaintiffs may proceed on this claim. Therefore, Count II is dismissed.

### 4. Preemption of State Law Claims by Copyright Act

Defendants claim that three counts - Count III, V, and VI - should be dismissed because they are preempted by the Copyright Act. Preemption requires an analysis of congressional intent behind the federal law at issue. Such intent may be either expressly or impliedly given by Congress. ***Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 338, 104 S. Ct. 615, 621 (1984)**. Express preemption is given when "Congress' command is explicitly stated in the statute's language . . . ."

*Fidelity Fed. Savings & Loan Assoc. v. De la Cuesta*, **458 U.S. 141, 152-53, 102 S. Ct. 3014, 3022 (1982)**. The Copyright Act provides:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

**17 U.S.C. § 301(a)**. The question, then, is whether any of the claims asserted under state law are equivalent to the rights specified under section 106 of the Copyright Act. The Seventh Circuit has held that "to avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law-i.e., conduct other than reproduction, adaptation, publication, performance, and display." *Toney v. L'Oreal USA, Inc.*, **406 F.3d 905, 910 (7th Cir. 2005)**. In addition, a state law will not be preempted even if it regulates the same conduct as long as it requires additional elements to make out a cause of action and the elements "differ in kind from those necessary for copyright infringement." *Baltimore Orioles, Inc. v. Major League Baseball Players*, **805 F.2d 663, n. 26 (7th Cir. 1986)**. With these principles in mind, the Court considers each claim below.

        **a. The Uniform Deceptive Trade Practices Act and Common Law Unfair Competition - Count III and V**

Plaintiffs allege that Defendants have violated the Illinois Deceptive

Trade Practices Act ("IDTPA")[3] by making "false or misleading descriptions of fact, or false or misleading representations of fact, in connection with Defendants goods

---

[3] The UDPTA states:
(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(4) uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

(6) represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) represents that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another;

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

(9) advertises goods or services with intent not to sell them as advertised;

(10) advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

or services." (Doc. 2, ¶ 123.) In addition, Plaintiffs claim that Defendants have engaged in unfair business procedures in violation of Illinois' unfair competition common law. Defendants argue that Plaintiffs' claims of deceptive trade practices and unfair business practices are preempted by the Copyright Act.

Because there is overlap between the UDTPA and the Copyright Act, the Court must look to the specific allegations contained in the Complaint to determine whether the UDTPA offers some additional right or entitlement from the Copyright Act, which would preclude a finding of preemption. Defendants cite a case where a district court found that the UDTPA claim in that case was preempted by the Copyright Act, but the facts in that case are distinguishable. ***Natkin v. Winfrey*, 111 F.Supp. 2d 1003 (N.D. Ill. 2000)**. In that case, the Plaintiff had merely asserted "a garden variety copyright violation." ***Id.* at 1014**. Defendants rely on this lone case to assert that Plaintiffs' deceptive trade practices and unfair business practices are preempted.

However, in the present case, Plaintiffs have alleged an additional element not required by the Copyright Act: likelihood of confusion. While this element alone would not bar preemption, the conduct complained of under the UDPTA and unfair competition is qualitatively different than the conduct prohibited under the Copyright Act. Unfortunately, the Court is unable to find any Seventh Circuit cases on point. Nevertheless, the district court case relied upon by Plaintiffs has facts much more similar to the present case and is, therefore, instructive. "An

infringement of a copyright does not necessarily create confusion as to the endorsement of one's products or the affiliation between two entities. The nature of this UDTPA action is essentially focusing on the confusion created regarding the 'relationship' between the [plaintiffs and defendants]. The court finds such an action escapes preemption." ***Stephen & Hayes Const., Inc. v. Meadowbrook Homes, Inc.*, 988 F.Supp. 1194, 1199 (N.D. Ill., 1998)**. At this point, the Court cannot say that Plaintiffs' deceptive trade practices and unfair competition claims are preempted.

### b.  Unjust Enrichment - Count VI

Defendants assert that Plaintiffs unjust enrichment claims are preempted because "[s]uch unjust enrichment claims are routinely dismissed in these circumstances because they seek to enforce through state law a right that is exclusively defined under the Copyright Act." (Doc. 11, p. 14.)  This is the extent of Defendants argument.  Furthermore, Defendants do not cite a single Seventh Circuit case in support of this assertion, but instead cite, without discussion, a number of cases from other circuits.  It is a waste of the Court's time to take up issues that have not been even remotely briefed.  The Court will not dismiss this claim.

### 5.  RICO Claims - Count VII and VIII

Defendants argue that Plaintiffs have failed to meet the heightened pleading requirements for claims alleging fraud under **Federal Rule of Civil Procedure 9(b)**. Defendants assert that Plaintiffs "allege no specific facts specifying

the time, place and content of the allegedly false wire communication." (Doc. 11, p. 15.) The Court disagrees.

Again, it appears as though Defendants have failed to consider paragraphs of the Complaint that Plaintiffs incorporate by reference under specific counts. As noted above, "**[Rule 9(b)]** requires 'the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."' *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, **20 F.3d 771, 777 (7th Cir. 1994) (citations omitted)**. Plaintiffs have *clearly* articulated the who (Rusty Carroll and R2C2)(Doc. 2, ¶¶ 3-4), the time (all times following May 15, 2005, the date Plaintiffs' copyright of the manuscript became effective) (Ex. E), the place (the Carroll term paper websites) (Doc. 2, ¶¶ 42-58), the content of the misrepresentation (claiming to have purchased from professionals the materials offered for sale on the website) (*Id.*), and the method by which the misrepresentation was communicated (over the internet - clearly a form of wire communication) (*Id.*) Given the thoroughness of Plaintiffs' allegations of the fraud perpetrated by Defendants, the Court is quite frankly bewildered that Defendants could even argue that Plaintiffs have failed to meet the pleading requirement under **Rule 9**. The Court will obviously not dismiss these claims.

### 6. Illinois Consumer Fraud and Deceptive Business Practices Act - Count IV

Defendants again claim that Plaintiffs have failed to sufficiently plead

allegations of fraud, this time under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Deceptive Practices Act"). As discussed above, the Court finds this simply not to be true.

Lastly, Defendants claim that Plaintiffs lack standing to sue under the Deceptive Practices Act because they are not consumers and have not suffered a pecuniary loss. Under the plain language of the statute, "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." **815 ILCS 505/10a(a)**. Furthermore, the Act defines the term "person" as well as the term "consumer." **815 ILCS 505/1 (c) and (e)**. Based on this language, the Court does not believe that Plaintiffs must be consumers to bring claim. ***See also Scarsdale Builders, Inc. v. Ryland Group, Inc.,* 911 F.Supp. 337, 338 (N.D., Ill. 1996);** ***P.I.A. Mich. City, Inc. v. National Porges Radiator Corp.*, 789 F.Supp. 1421, 1428 (N.D. Ill. 1992).** Finally, Plaintiffs have asserted that they have suffered "actual damages" in that 1) the manuscript's commercial value has been damaged by the Defendants unauthorized use of the paper and 2) Plaintiffs have suffered damage to their reputation. Whether Plaintiffs are able to prove actual damages remains to be seen. But, at this point, Plaintiffs have asserted sufficient facts to allege "actual damages."

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss on Counts I, III, IV, V. VI, and VII (Doc. 11), but **GRANTS** Defendant's

Motion to Dismiss as to Count II pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)**.

**IT IS SO ORDERED.**

Signed this 28th day of September, 2007.

/s/    DavidRHerndon

**United States District Judge**