IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHAD WEIDNER, an individual; and<br>KAROLIEN WALRAVENS, an individual,<br><br>　　　　Plaintiffs,<br><br>　VS.<br><br>RUSTY CARROLL, and individual; and<br>R2C2, INC., a corporation;<br><br>　　　　Defendants. | Case No. 06-782-DRH-PMF<br><br>Judge David R. Herndon<br>Magistrate Judge Philip M. Frazier |

## REPORT AND RECOMMENDATION

Based on facts of record, which show that Rusty Carroll and R2C2, Inc. (collectively "Defendants") failed to comply with various discovery obligations on multiple occasions having been warned that continued noncompliance would result in sanctions, including default, the Court hereby issues this Report and Recommendation recommending default against Defendants for ongoing and willful noncompliance with discovery obligations.

　　　1.　　This case is a putative class action brought by two named Plaintiffs, Chad Weidner and Karolien Walravens (collectively "Plaintiffs"), against the owners and operators of a number of internet businesses that, through various websites, offer term paper-related services to their customers. *See generally* August 10 Show Cause Hearing Transcript ("Hearing Transcript") at 7:17-8:3, 93:6-94:25.

　　　2.　　Over the course of seven months, Plaintiffs have sought to obtain Court-ordered discovery from Defendants on damages-related issues.

　　　3.　　At the March 2, 2007, Rule 16 Conference, in an effort to place the parties in a position to resolve the pending damages issue through settlement, the Court ordered that Plaintiffs

take expedited discovery on damages-related issues and that Defendants promptly produce all documents relevant to damages. Consent Memo at 2;[1] Hearing Transcript at 15:22-16:2.

4.     The Court further ordered that the parties meet and confer shortly after the Rule 16 Conference to discuss any specific documents Plaintiffs would be seeking through informal discovery. Consent Memo at 2.

5.     On Monday, March 5, 2007, Plaintiffs sent Defendants a letter outlining the different types of documents Plaintiffs believed were relevant and should be produced during this phase of informal discovery. Consent Memo 2.

6.     Plaintiffs' March 5, 2007, letter requested, among other things, documents concerning Defendants' assets, documents concerning Defendants' state and federal tax filings, documents concerning any accounts Defendants had with financial institutions, documents concerning Defendants' business relationships with partners and affiliates, and documents concerning Defendants' business relationships with its customers.

7.     On Tuesday, March 6, 2007, the parties met and conferred regarding the documents Plaintiffs described in their March 5, 2007, letter, and Defendants agreed that all requested documents were relevant to damages and would be produced in advance of Defendants' depositions, which were scheduled for late March. Consent Memo at 2.

---

[1] The "Consent Memo" is a document generated at the Court's request, and *consented to by both parties*, relating to a March 21, 2007, discovery conference. The Consent Memo memorializes the undisputed agreements and events taking place at the Rule 16 Conference, at the March 21 discovery conference, and during the intervening time period. This document is attached to Plaintiffs' Show Cause Motion at Exhibit 2.

8.  In the following two weeks, Defendants limited their production to fragments of their federal tax filings for 2003, 2004, and 2005 and produced nothing else. Consent Memo at 3.

9.  On March 22, 2007, the Court held an emergency discovery hearing and, finding Defendants' production deficient, once again ordered Defendants to produce all documents concerning damages, including the documents and information described in Plaintiffs' March 5, 2007, letter. Consent Memo at 3-5.

10. The Court informed Defendants that any subsequent failure to comply would result in sanctions. Consent Memo at 5-6.

11. The Court ordered that Defendants' subsequent production be in Plaintiffs' possession no later than March 28, 2007, so that Plaintiffs would have adequate time to prepare for the individual and 30(b)(6) depositions of Defendants,[2] which had been rescheduled for April 3, 2007. Consent Memo at 5; Plaintiffs' Motion for Show Cause Hearing (Docket Entry No. 31) ("Plaintiffs' Show Cause Motion") at 3.

12. The Court further ordered that Defendants certify that they had complied with their discovery obligations upon producing the requested damages information. Consent Memo at 5.

13. The Court provided specific instructions on certification, ordering that defendants certify under penalty of perjury that Defendants had produced all relevant documents and that no other relevant documents existed. Consent Memo at 5.

14. As part of its certification instructions, the Court also ordered that Defendants list the locations in which Defendants had searched for relevant documents, the third parties defendants had

---

[2] Pursuant to an agreement by the parties, Rusty Carroll was to testify in his individual capacity and on behalf of Defendant R2C2, Inc. on April 3, 2007.

contacted to obtain relevant documents (to the extent Defendants believed relevant documents existed), and any documents being withheld from production by third parties. Consent Memo at 5.

15. Plaintiffs received Defendants' subsequent document production two business days before Defendants' depositions. Plaintiffs' Show Cause Motion at 3.

16. Instead of certifying pursuant to the Court's orders, Defendants served two "Affidavit[s] of Compliance," one on behalf of Defendant Rusty Carroll and one on behalf of Defendant R2C2, Inc., both of which failed to include the terms of certification ordered by the Court. 17. While informal discovery was occurring, Plaintiffs also served a subpoena upon Rusty Carroll commanding that Defendants produce the documents originally requested in Plaintiffs' March 5, 2007, letter at Defendants' deposition on April 3, 2007.

18. Defendant Rusty Carroll failed to produce any additional documents on April 3, 2007.

19. During deposition on April 3, 2007, it became clear that Defendants had not produced all documents and information as required by Court order; this failure caused counsel to stipulate on the record that (1) Defendants had failed to produce the documents that the Court had commanded be produced and (2) Defendants' 30(b)(6) corporate representative (Rusty Carroll) was unprepared to testify due to the failure to produce proper documentation. Plaintiffs' Show Cause Motion at 3.

20. On April 10, 2007, the parties appeared before the Court for a telephonic hearing to address the pending discovery issues.

21. After learning of Defendants' failures to comply with discovery, the Court declined to enter sanctions at that time but instead ordered that formal discovery be served upon Defendants

and warned Defendants that any subsequent failure would result in sanctions. *See* April 10, 2007, Minute Order (Docket Entry No. 28).

22. The Court entered a Minute Order stating: "In the event the defendants do not produce all requested materials by May 10, 2007, there will be a show cause hearing set in Benton, the purpose of which will be to determine appropriate sanctions, which will include <u>at a minimum plaintiffs' attorneys' fees and expenses for attending the hearing.</u>" *Id.* (emphasis added).

23. The April 10, 2007, Minute Order also granted Plaintiffs the opportunity to depose two of Defendants' business partners. *Id.*

24. Plaintiffs subsequently served formal discovery and, after receiving Defendants' responses, thereafter alleged that Defendants failed to produce documents and information in response to Plaintiffs' formal discovery.

25. Plaintiffs alleged, among many other things, that Defendants did not properly produce documents and in response to (1) Plaintiffs' Request for the Production of Documents No. 6, seeking documents concerning Defendants' accounts with financial institutions, and (2) Plaintiffs' Request for the Production of Documents No. 20, seeking documents relating to Defendants' assets with a fair market value greater than $10,000.00.[3]

26. Defendants did not offer any objection to these two Requests for the Production of Documents.[4]

---

[3] Defendants' Response to Plaintiffs' First Set of Requests for the Production of Documents (Nos. 1-23) is attached to Plaintiffs' Show Cause Motion at Exhibit 15.

[4] *See* n.3.

27. Plaintiffs also alleged that Defendants did not properly produce information in response to Plaintiffs' Interrogatory No. 7 seeking, among other things, the contact information for the owners and/or operators of websites affiliated with Defendants' websites.[5]

28. Defendants did not offer any objection to this Interrogatory.[6]

29. Plaintiffs also alleged that Defendants failed to produce documents in response to (1) Plaintiffs' Request for the Production of Documents No. 9, relating to identification of each person who has purchased subscriptions or term paper related materials through Defendants' term paper websites, and (2) Plaintiffs' Request for the Production of Documents No. 10, relating to any request for a refund or credit concerning Defendants' term paper websites.[7]

30. In response to these two Requests for the Production of Documents, Defendants stated: "Plaintiffs object to Interrogatory No. 9 in whole on the grounds that it exceeds the scope fo the 'Minute of Court and Minute Order' dated April 10, 2007 in that it is not reasonably expected to yield information relevant to the scope of damages.'"[8]

31. Plaintiffs also alleged that Defendants failed to produce documents in response to Plaintiffs' Request for the Production of Documents No. 24, seeking documents concerning the business affiliates that Rusty Carroll identified during his April 3, 2007, deposition.[9]

---

[5] Defendants' Response to Plaintiffs' First Set of Interrogatories (Nos. 1-9) is attached to Plaintiffs' Show Cause Motion at Exhibit 17.

[6] *See* n.5.

[7] *See* n.3.

[8] *See* n.3.

[9] Defendants' Response to Plaintiffs' Second Set of Requests (Nos. 24-55) for the Production of Documents is attached to Plaintiffs' Show Cause Motion at Exhibit 16.

32. Although the Court specifically granted Plaintiffs the opportunity to depose two of Defendants' business partners in its April 10, 2007, Minute Order, Defendants nevertheless responded: "Defendants object to <u>Interrogatory No. 9</u> in whole on the grounds that it exceeds the scope of the 'Minute of Court and Minute Order' dated April 10, 2007, in that it is not reasonably expected to yield information relevant to the scope of damages."[10]

33. Plaintiffs subsequently moved to show cause pursuant to the April 10, 2007, Minute Order.

34. The Court held a show cause hearing on August 10, 2007.

35. At the show cause hearing, Defendant Rusty Carroll admitted for the first time that a hitherto-undisclosed money market account existed and produced in open court a page from the money market account's registry showing a significant number of expenditures exceeding thousands of dollars. Hearing Transcript at 63-70.

36. On the Monday and Tuesday following the show cause hearing (August 13-14), Plaintiffs repeatedly requested documents and information concerning the money market account.

37. Plaintiffs again requested documents and information concerning the money market account at a meet and confer with opposing counsel on Wednesday, August 15.[11]

38. Defendants still have not provided Plaintiffs with documents and information concerning the money market account to this date, nearly two months after the show cause hearing.

---

[10] *See* n.9.

[11] *See* Exhibit 5 to Notice of Additional Facts Concerning Defendants' Money Market Account (8/14/07 letter from E. Parke letter to J. Green).

39. The Court held a telephone conference with the parties on September 14, 2007, to discuss any outstanding objections to discovery. *See* Sept. 14, 2007, Minute Order (Docket Entry No. 50).

40. Upon learning that Defendants still had not provided Plaintiffs with certain documents and information relevant to damages, including records of the money market account discussed at the show cause hearing, the Court ordered that Defendants pay $6,847.06 in costs and fees to Plaintiffs' counsel by 4:00 p.m. EDT on September 21, 2007. *Id.*

41. Defendants' counsel sent Plaintiffs' counsel an email on September 20, 2007, confirming that Defendants "will not be forwarding a check as ordered by the Judge." *See* 9/21/07 letter from E. Parke to Judge Frazier.

42. Based on the record and based on testimony of Defendant Rusty Carroll (who is also President of Defendant R2C2, Inc.) elicited at the show cause hearing on August 10, 2007, the Court finds that Defendants have been woefully deficient in complying with their discovery obligations. Hearing Transcript at 86:14-21 ("I mean I am satisfied that, I don't know the depth and breadth of nonproduction, but it seems very clear to me that Mr. Carroll and Mr. Green have been woefully deficient if [sic] fulfilling their responsibilities to get this information. I mean, I found out more from you in the last ten minutes [of testimony] than your attorney found out from you, presuming you told your attorney the truth about all these things you own."), 117:25-118:19 ("I don't have any problem for today finding that the defendant has failed to do that which was ordered, among other things, to specifically attest to what was done to locate people, to locate documents, to do all these other various things that were specifically set forth in an order . . . . To the extent it's proceeded at all, it has been in fits and starts and has not been according to the rules or good practice.").

43. The Court finds that Defendants' repeated failures to comply with multiple discovery orders (including those concerning informal discovery, formal discovery, and the subpoena upon Rusty Carroll) were in bad faith and with willful intent. Hearing Transcript at 91:23-92:7 ("I'll say for the record that, I mean, I'm satisfied that there has been insufficient production, particularly — I mean, if this we re the very first time we were here, if you guys had had your informal conference and, you know, then I'd just say, 'Well, you know, yeah, it's kind of aggravating, but that's the way it goes. Do this by a certain day and everybody's good to go,' but this is our eighth time, I think. We've been dancing this dance for a while. And we passed the enough is enough stage a long time ago.").

44. Defendants understood their obligation to produce responsive damages-related documents and information from the outset of informal discovery in March 2007. Hearing Transcript at 70:5-8 ("Q: Was it your understanding in March of 2007 that you had an obligation to produce documents and information relating to your assets? A: Yes."), 112:21-113:1 ("Q: You understood your obligation in March of 2007 to produce emails, correct? A. Yes."); Consent Memo at 2 ("Defendants agreed that all documents sought in the Plaintiffs' March 5, 2007, letter were relevant to damages and would be produced to the extent they existed.").

45. Since the discovery conference on March 21, 2007, where the Court found Defendants' then-current damages production deficient, the Defendants have understood that any subsequent failure to comply with discovery would result in sanctions, including the potential entry of default judgment. Consent Memo at 5-6 ("Additionally, the Court warranted that failure by Defendants to produce any relevant documents or be prepared for the upcoming depositions would result in Defendants being redeposed by Plaintiffs at a future date, with Defendants bearing all costs

and fees as sanctions (including but not limited to costs relating to travel, and including but not limited to Plaintiffs' lead counsels' attorneys fees for preparation for and conducting depositions), with the possibility of additional sanctions to be levied upon Defendants for noncompliance."); April 10, 2007, Minute Order.

46.     Nevertheless, over the course of the ensuing five months, throughout informal discovery, formal discovery, and in response to a subpoena, Defendants have avoided producing responsive documents and information concerning, among other things, Defendants' business affiliates, accounts at financial institutions, and assets having a value greater than $10,000.00. Hearing Transcript at 77-85, 86:14-21, 91:23-92:7, 103: 12-17 ("Q. There are emails that you have in your possession that have been exchanged with [partner] Dustin Rasnick? A: Yes. MR. PARKE: We submit that the email should have been produced. THE COURT: The email should have been produced."), 112:21-23 (THE COURT: "Okay. Go ahead. And, yes, I agree that that information [emails relating to partner Andrew Charney] should have been produced and has not been.").

47.     During this time, Defendants have taken untenable positions, such as alleging that responsive documents concerning assets and their business partners did not exit — documents that Defendants later admitted at the show cause hearing did, in fact, exist. Consent Memo at 3 ("Defendants then argued, as it had done in the past, that no other documents existed, and no other documents would be produced."); Hearing Transcript at 77-85 (finding that Defendants failed to produce various mortgages, deeds, etc. for its properties); *see, e.g.*, Hearing Transcript at 103:12-17 (testimony by Defendants that they possessed responsive emails concerning Defendants' partners), 63-70 (addressing entries in a money market account that Defendants failed to produce).

48.     At the show cause hearing, the Court found that Defendants failed to turn over documents and information relating to Defendants' key bank account — a money market account that Defendants used to hold large sums of money for various significant purchases and transfers of funds.  Hearing Transcript at 62:5-8 (MR. PARKE: "I'll state for the record we were unable to find documents and information of the type that we were discussing from a money market account that shows those types of withdrawals."), 62:10-13 (MR. PARKE: "[I]t looks like in the year of 2005, particularly in November and December of 2005, there were some significant financial transactions that took place that are not reflected in your records."), 64:1-5 (MR. PARKE: "Your honor, we would submit that all of this information [concerning the money market account] is relevant to damages, finances.  THE COURT: "I agree.  But once again, that's why we're here.  All of this information should have been produced in the first place."); *see, e.g.*, 63-70 (inquiring about several entries in Defendants' money market account registry, including transfers allegedly relating to the purchase of a new car).  To date, Defendants still withhold such documents and information.

49.     Worse still, Defendants violated a Court order concerning certification obligations, by not, as required by the Court, certifying under penalty of perjury that all relevant documents had been produced, listing the locations where Defendants had searched for such documents, certifying that no other relevant documents exist, listing the third parties defendants had contacted to obtain relevant documents (to the extent Defendants believed relevant documents existed), and listing any documents being withheld from production by third parties.

50.     The Court finds that Defendants have contumaciously failed to pay $6,847.90 in costs and fees to Plaintiffs' counsel by 4:00 p.m. EDT on September 21, 2007, pursuant to the September

14, 2007, Minute Order.  It is further noted that Defendants were warned that failure to make timely payment would result in default.

52. The Court finds that Defendants' ongoing and repeated failure to comply with discovery was in bad faith and with willful intent, having warned Defendants in the past that such behavior could lead to entry of default.

52. Rule 37(b)(2) of the Federal Rules of Civil Procedure sets forth the sanctions which are available to the Court in these circumstances.  The reader will note from the chronicle set forth above that the lesser sanctions have not produced satisfactory results.  The Court's intention in this matter was that it proceed with the least amount of expense and personal disruption possible.  The opposite has ensued.  Defendants and their attorney have resisted those efforts at every turn.  It appears that Defendants and their attorney are either unable or unwilling (or both) to do what is required of them in this action.  No configuration of extensions to provide information, orders to do so, cajoling, or threats have worked.  Finally, Defendants were ordered to at least compensate Plaintiffs for the unnecessary time their very competent and expensive attorneys have put into this.  They were informed that their failure to do so would result in the only remaining sanction, default.  Defendants did not offer to pay even a portion of the relatively small amount they were ordered to pay.  I have no faith that they will abide by any orders of this Court concerning further discovery or other obligations.  Default is appropriate when less drastic sanctions prove to be insufficient. *Williams v. Chicago Board of Education*, 155 F.3d 853 (7th Cir. 1998).  Less drastic sanctions have failed in this case, and default is appropriate.

For all the foregoing reasons, IT IS RECOMMENDED that default be entered in favor of Plaintiffs and against all Defendants on the class certification issue and that the matter proceed to a hearing on default judgment.

**SUBMITTED:  October 26, 2007.**

<u>*s/Philip M. Frazier*</u>
**HON. PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**
