IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHAD WEIDNER, an individual,
KAROLIEN WALRAVENS, an individual,

        Plaintiffs,

vs.

RUSTY CARROLL, an individual,
R2C2, INC., a corporation,

        Defendants.        CASE NO. 06-CV-782-DRH

FINAL JUDGMENT AND PERMANENT INJUNCTION BY CONSENT

This action having been commenced by the filing of a Complaint by Plaintiffs Chad Weidner and Karolien Walravens, on behalf of themselves and a class of individuals similarly situated ("Plaintiffs"), against Defendants Rusty Carroll and R2C2, Inc. ("Defendants") for Copyright Infringement, Violation of Section 43(a) of the Lanham Act, Unfair Competition Under Illinois Statutes and Common Law, Violation of the Federal RICO Statute and Unjust Enrichment, and Plaintiffs and Defendants having agreed to settle this matter and terminate this action by this Final Judgment and Permanent Injunction By Consent, and this matter having been brought on for a hearing by stipulation and the Court being duly advised, the Court finds and orders as follows:

FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The named Plaintiffs Chad Weidner and Karolien Walravens ("Named Plaintiffs") brought this civil action against Defendants on October 12, 2006, on behalf of themselves and a class of individuals similarly situated, alleging violations of the Copyright Act, federal RICO statute, and for unfair competition under Illinois statutory and common law.  Jurisdiction is conferred on this Court pursuant to 28

U.S.C. §§1331, 1338(a), and 1367.  Venue is proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1965(a).

2. Defendant Rusty Carroll is an individual residing in Illinois.  Defendant R2C2, Inc. ("R2C2") is an Illinois corporation based in Carbondale, Illinois (collectively, "Defendants").  Defendant Carroll is the sole shareholder of R2C2.

3. Defendants own and operate numerous Internet websites that offered for sale term papers and other written works ("Defendants' Term Paper Websites").

4. Named Plaintiffs are individuals currently residing in the Netherlands. The Court has identified additional members of the plaintiff class as owners of the materials offered to the public through Defendants' Term Paper Web Sites, excluding: (i) Defendants; (ii) those who both have the legal authority to grant and have granted the Defendants or Defendants' Term Paper Web Sites proper authorization to use their materials through Defendants' Term Paper Web Sites; and (iii) Blue Macellari.  Named Plaintiffs and other members of the Plaintiffs' Class are collectively referred to herein as "Plaintiffs."

5. Named Plaintiffs are the authors of the work titled "Native Dyes: Race and Politics in the Jacobean Masque" ("Native Dyes Manuscript").  Named Plaintiffs own a valid U.S. copyright registration for the Native Dyes Manuscript, with an effective registration date of May 15, 2006.  The other members of the Plaintiffs' Class also own valid copyright rights in additional works of authorship.  Plaintiffs' works of authorship, including the Native Dyes Manuscript and all other works on Defendants' websites are collectively referred to herein as "Works Of Authorship."

6. Plaintiffs have not licensed or authorized Defendants to exercise any of Plaintiffs' exclusive copyright rights in their Works Of Authorship, including the right to reproduce, display, distribute copies of or prepare derivative works of Plaintiffs' Works Of Authorship.

7. Defendants have willfully infringed Plaintiffs' copyrights in their Works Of Authorship, in violation of 17 U.S.C. §§ 106 et seq., by engaging in the following acts without obtaining authorization from Plaintiffs: (a) reproducing Plaintiffs' Works Of Authorship; (b) displaying copies of Plaintiffs' Works Of Authorship on Defendants' Term Paper Websites; (c) distributing copies of Plaintiffs' Works Of Authorship on Defendants' Term Paper Websites; and/or (d) preparing derivative works of Plaintiffs' Works Of Authorship.

8. On March 31, 2008, the Court simultaneously granted class certification and entered default judgment against Defendants on all issues of liability.

9. On January 21, 2010, the Court granted Plaintiffs' motion for permanent injunction, entering an Order prohibiting and permanently enjoining Defendants from operating any Internet websites selling term papers, essays, or other works of authorship, except for those papers that Defendants can prove with sworn

documentary evidence from the author that he or she is in fact the creator of that work and that Defendants have permission to sell that work.

10. Defendants admit that the measures instituted by Defendants to comply with the Court's permanent injunction Order have been ineffective in practice, allowing obviously infringing work to continue to be offered for sale on Defendants' Term Paper Websites.

11. Plaintiffs and Defendants have agreed to completely resolve this case, cause and controversy by and between them by this Final Judgment and Permanent Injunction By Consent ("Consent Judgment"), have agreed to the entry of this Consent Judgment, and have read this Consent Judgment and agree to be fully bound by its terms.  Pursuant to the parties' settlement agreement, the above Findings of Fact and Conclusions of Law, and the stipulation of the parties hereto, the Court ORDERS, ADJUDGES, AND DECREES:

(A) The Court hereby enters judgment in the amount of $300,000 against Defendants, jointly and severally, on all counts of Plaintiffs' Complaint, and terminates the action.

(B) Effective as of the date of the entry of this Consent Judgment, Defendants, as well as their employees, agents, officers, directors, attorneys, representatives, successors, affiliates, subsidiaries and assigns, and all those in concert or participation with any of them, shall strictly comply with the provisions of this Consent Judgment.

(C) Upon completion of the requirements in Para. (D)(4) of this Consent Judgment, Defendants shall immediately cease owning, operating or participating in the ownership or operation of any website that hosts Works of Authorship created by anyone other than Defendants, and shall immediately shut down all of their Term Paper Websites, and will permanently refrain from operating any other such websites in the future.  Defendants will not sell or transfer any websites or Works of Authorship to any person and shall destroy all such Works of Authorship currently in their custody or control.

(D) Plaintiffs agree to stay the execution of the $300,000 judgment, subject to Defendants meeting and continuing to meet the following conditions:

(1) Defendants continued compliance with the permanent injunction provision set forth above in Paragraph (C) of this Consent Judgment;

(2) Defendants shall make a payment to Plaintiffs of $20,000, the first $4,000 of which shall be distributed in equal parts to the two named class representatives, Chad Weidner and Karolien Walravens, and the balance paid to McDermott Will & Emery LLP to cover a reasonable portion of attorneys' costs and expenses in bringing this lawsuit, all of which shall be paid over the course of 7

years in equal monthly installments, the first payment to be made two years from the date the Consent Judgment is signed by the Court.

          (3)    Defendants shall post and incur all costs associated with the posting of the following statement once in The Chronicle of Higher Education and continuously for four months on Defendants' Term Paper Websites: "Rusty R. Carroll and his business R2C2, Inc. acknowledge that on their Term Paper Websites they have offered others' works of authorship without authorization; such works were submitted to their websites by third parties.  Mr. Carroll and R2C2, Inc. acknowledge that these actions constitute copyright infringement.  Mr. Carroll and R2C2, Inc. sincerely apologize for any harm that was caused to the authors of such works and the damage caused to academic integrity as a whole.  Mr. Carroll and R2C2, Inc. have agreed to permanently cease operations of all such Term Paper Websites."

          (4)    Defendants shall pay all costs associated with notifying the Class of the content of this Settlement Agreement by publication one time in The Chronicle of Higher Education and twice in the Wall Street Journal, and also continuously for four months on Defendants' Term Paper Websites.  The costs associated with notifying the Class by publication in The Chronicle of Higher Education and The Wall Street Journal shall be deducted from the $20,000 payment to Plaintiffs set forth Supra at ¶ D.2.

     (E)    Upon entry of this Consent Judgment, Plaintiffs agree to dismiss their Motion For An Award of Damages.  Accordingly, simultaneously with the entry of this Consent Judgment, the Court hereby dismisses Plaintiffs' Motion For An Award of Damages.

     (F)    Within six months of entry of this Consent Judgment, Defendants shall file one sworn certification with the Court, certifying that they have complied with this Consent Judgment and detailing their compliance efforts.

    7.    If there are any violations of this Consent Judgment, Plaintiffs will execute the $300,000 judgment against Defendants and establish a common fund from the proceeds of the judgment to be distributed as follows:

     a.    The first $200,000 shall be distributed in equal amounts proportionally divided and paid out by unit (units defined as each work of authorship of a class member hosted on one of Defendants' websites for which the class member did not grant the Defendants authorization to use the work of authorship) to each class member who can demonstrate that he or she authored a work of authorship that was hosted on one of Defendants' websites but for which the class member did not grant Defendants authorization to use the work of authorship by submitting to the Court proof in the form of a screen shot from one of Defendants' website, an internet cache page, email correspondence, an affidavit, or another form of proof acceptable to the Court that his or her work was hosted on one of the websites;

        b.    The balance shall be placed into a cy pres fund to be distributed to the Southern Illinois University at Carbondale for use in a scholarship fund.

    7.    If there are any violations of this Consent Judgment, Plaintiffs shall also be entitled as a matter of contracted right for their reasonable costs and attorney's fees, and any other and further relief to which they may be entitled. The jurisdiction of this Court is retained for the purposes of making any other orders necessary or proper to construe, enforce or implement the terms of the Consent Judgment, and to punish and award damages and attorney's fees for violations of this Consent Judgment.

    IT IS SO ORDERED.

Dated: January 21, 2011

David R. Herndon
2011.01.21
10:18:21 -06'00'

Hon. David R. Herndon
Chief Judge